UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.: ______________________

LAVAR G. PALMER,

Plaintiff,

v.

FENCE CENTRAL, INC.,
a Florida corporation,

Defendant.

# COMPLAINT

Plaintiff, Lavar G. Palmer ("Plaintiff" or "Mr. Palmer"), by and through the undersigned counsel, hereby files this Complaint against Defendant Fence Central, Inc. ("Fence Central" or the "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

This is a civil action for damages, declaratory relief, injunctive relief, and all other appropriate remedies arising from Defendant's unlawful employment practices in violation of federal and Florida law. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq. ("FCRA").

Plaintiff, a Black man of Jamaican national origin who practices the Rastafari faith and wears dreadlocks as an expression of his sincerely held religious beliefs and cultural identity, seeks redress for Defendant's discriminatory and retaliatory conduct, including disparate treatment based on his race, color, and national origin, and retaliation for opposing what he reasonably believed to be unlawful discrimination.

Defendant's actions, including subjecting Plaintiff to heightened scrutiny and disparate discipline not applied to non-Black, non-Jamaican comparators, downgrading his job classification, singling him out for weekend and disproportionate manual-labor assignments, and abruptly terminating his employment by text message on November 30, 2024, without any prior warning or progressive discipline, while a White employee who had voluntarily resigned was rehired into his position, constitute unlawful discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the FCRA.

Plaintiff seeks all relief available under Title VII, 42 U.S.C. § 1981, and the FCRA, including back pay, front pay or reinstatement, compensatory and punitive damages, emotional distress damages, declaratory and injunctive relief, restoration of lost benefits, prejudgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## PARTIES

1. At all times material, Plaintiff Lavar G. Palmer is an adult Black male of Jamaican national origin who practices the Rastafari faith and wears dreadlocks, and is a resident of Polk County, Florida.

2. At all times material, Plaintiff was a "person," "aggrieved person," and "employee" as those terms are defined under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f); 42 U.S.C. § 1981; and the Florida Civil Rights Act, Fla. Stat. § 760.02.

3. At all times material, Plaintiff was a member of statutorily protected classes based on his race and color as a Black man, his national origin as a person of Jamaican descent.

4. Defendant Fence Central, Inc. is a Florida profit corporation with its principal place of business located at 5880 Lucerne Park Road, Winter Haven, Florida 33881. Fence Central is a

fence sales and installation company that, at all times material, conducted business in Polk County, Florida, where Plaintiff was employed.

5. At all times material, Fence Central was Plaintiff's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b); 42 U.S.C. § 1981; and the Florida Civil Rights Act, Fla. Stat. § 760.02.

6. At all times pertinent hereto, Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(3)-(4), as this action arises under the laws of the United States prohibiting discrimination and retaliation in employment, including Title VII and 42 U.S.C. § 1981.

8. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with his federal law claims, the parties are identical, and resolving both sets of claims in one action promotes judicial economy, efficiency, and fairness to the parties.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in and maintains its principal place of business in this judicial district, the acts and omissions giving rise to these claims occurred in whole or in part in Polk County, Florida, and Plaintiff's employment records are maintained in this judicial district.

## CONDITIONS PRECEDENT

10. Plaintiff has complied with all conditions precedent in filing this action, to wit:

a. Plaintiff timely filed a Charge of Discrimination against Fence Central, Inc. with the U.S. Equal Employment Opportunity Commission, Tampa Field Office, Charge No. 511-2025-05188, alleging discrimination based on race, color, and national origin, and retaliation;

b. The Charge was dual filed with the Florida Commission on Human Relations (FCHR) under Fla. Stat. § 760.10;

c. More than 180 days have passed since the filing of Plaintiff's Charge of Discrimination;

d. On June 23, 2026, the EEOC issued a Notice of Right to Sue authorizing Plaintiff to commence a civil action in federal court; and

e. This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

11. Any other applicable conditions precedent to bringing this action have occurred, been performed, or been excused before the filing of this lawsuit.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. Plaintiff Lavar G. Palmer is a Black man of Jamaican national origin who practices the Rastafari faith and wears dreadlocks. At all relevant times, Plaintiff was a member of a protected class based on his race, color, and national origin.

13. Plaintiff's race, color, and national origin were known and/or readily apparent to Defendant throughout his employment.

14. Plaintiff began working for Fence Central on or about July 17, 2024, as an Assistant Team Lead, and remained employed until his wrongful termination on November 30, 2024.

15. At all times relevant Plaintiff performed his job satisfactorily or above satisfaction.

16. At the time of his hiring, Plaintiff was told by Operations Manager April Lahman. that he would have a long tenure with the company, that he was a strong candidate for promotion, and that he would be promoted to Team Lead.

17. Plaintiff accepted the job based on Defendant's promise, and in reliance on Defendant's representations, Plaintiff made personal sacrifices to ensure his availability and reliability, including relocating to within approximately three minutes of the job site.

18. Because of his experience, Plaintiff was hired as an Assistant Team Lead. Plaintiff earned approximately $17.50 per hour. Plaintiff understood and agreed that his schedule would be Monday through Friday, beginning at approximately 6:30 a.m., with approximately forty hours per week, and that Saturday work would be optional and voluntary. In practice, Plaintiff worked approximately thirty-five to forty hours per week at times, but on some weeks worked as few as approximately twenty-three hours.

19. From the outset of his employment, Plaintiff consistently performed Team-Lead-level duties. He supervised installations, including projects in Davenport and Clermont, completed homeowner paperwork, transported materials, and drove company trucks at Defendant's direction.

20. Plaintiff performed his duties competently and reliably. He showed up early, took on demanding manual labor without complaint, and agreed to work Saturdays on short notice.

21. Plaintiff's attendance record was strong. He was absent only once, for an excused bereavement, and left early on only two occasions, both with management's prior approval, once when he was sent home for bronchitis and once for his daughter's medical appointment. Plaintiff

was never counseled, written up, warned, or subjected to any progressive discipline during his employment.

22. In or around August 2024, Operations Manager April Lahman's employment with Defendant ended, and Plaintiff's immediate supervisor became Michael Spallone, Defendant's owner, who is a White Male.

23. Immediately following Lahman's departure, the workplace culture toward Plaintiff shifted. Mr. Spallone unilaterally altered Plaintiff's job classification from Assistant Team Lead to "Floater" without notice or updated documentation. Accordingly, Plaintiff's duties and responsibilities changed from shadowing and assisting Team Leads, setting posts, running lines, marking property lines, dealing with job-site tasks, and performing Assistant Team Lead responsibilities, to performing helper and laborer tasks, including unloading trucks, carrying seventy to eighty bags of concrete, hauling concrete alone, demolition work, and other disproportionate manual labor. Essentially, Plaintiff was demoted.

24. In or around August 2024, Plaintiff became the target of heightened scrutiny, hostility, exclusion, and isolation by Defendant's owner, Michael Spallone. Employees gathered in Mr. Spallone's office, laughed and spoke together in a manner that excluded Plaintiff, and Mr. Spallone relied on those employees' statements about Plaintiff without giving Plaintiff an opportunity to explain his side. Plaintiff was not included in those conversations, felt isolated from the work group, and believed he was being treated as an outsider.

25. In comparison, similarly situated non-Black employees, including White and Hispanic male employees, were treated more favorably than Plaintiff. Employees who arrived late, were absent, or failed to appear for scheduled shifts were not written up or disciplined, while Plaintiff was subjected to heightened criticism. For instance, a White coworker known to Plaintiff

as Dante (Dantae Luhouse), employed as an installer, engaged in repeated no-call, no-show absences and was habitually late, yet was never written up or disciplined and was even permitted to take a company truck home.

26. Plaintiff, by contrast, was never written up, never warned, and never subjected to progressive discipline, yet was abruptly terminated.

27. During his employment, Plaintiff complained about and opposed the unequal treatment he experienced.

28. In or around August 2024, Plaintiff complained by telephone to Defendant's owner, Michael Spallone that he was being mistreated and assigned disproportionate manual labor. Plaintiff explained to Mr. Spallone when he accepted the job, it was not his understanding that he would be primarily tasked with carrying concrete bags all day while other employees sat on their phones, avoided work, or performed little to no labor. Plaintiff also complained that his input was disregarded and that he was being treated unfairly in the workplace.

29. During the same incident, Plaintiff reported that Eric, a White coworker, was taking incorrect measurements on a large chain-link fence project and refused to accept correction. Rather than address Plaintiff's concerns, Mr. Spallone dismissed the complaint, told Plaintiff not to worry about it, directed Plaintiff to return to the shop, and sent Plaintiff home for the day. Shortly after Plaintiff voiced these concerns, Defendant removed Plaintiff from Eric's crew and reassigned him to another crew.

30. On or about late August 2024, after Plaintiff complained about Eric's conduct, Defendant transferred Plaintiff off Eric's crew the following day, reassigned him to Jose Rodriguez's crew, began scheduling Plaintiff for Saturday work, and assigned him disproportionate manual-labor tasks.

31. On or around October 2024, Plaintiff also objected to lead installer Jose Rodriguez, a Hispanic Male, after Mr. Rodriguez's crew left Plaintiff behind one morning even though Plaintiff was scheduled to work with them and Plaintiff's work shoes and tools were in the crew's truck. Plaintiff told Mr. Rodriguez that it was wrong to leave him behind and that management should have notified him if he was being assigned to a different team. Defendant thereafter characterized Plaintiff as "combative."

32. On or about November 14, 2024, Plaintiff asked Fence Central's office assistant and notary public, Barbara Baynes, to notarize a release document related to the settlement of a prior workers' compensation matter Plaintiff had pursued against a former, unrelated employer. Plaintiff asked Ms. Baynes whether she could notarize the workers' compensation document, and what she would charge to do so. Ms. Baynes stated that she was not sure she could notarize it and that she needed to ask Mr. Spallone.

33. Ms. Baynes informed Mr. Spallone about Plaintiff's request and the existence of Plaintiff's prior workers' compensation settlement. When Plaintiff later entered Mr. Spallone's office, Mr. Spallone and Ms. Baynes were speaking, and Plaintiff understood that they had been discussing the paperwork and Plaintiff's prior legal claim. Immediately thereafter, Ms. Baynes told Plaintiff she did not think she could notarize the paperwork.

34. After Mr. Spallone became aware of Plaintiff's prior legal claim and its settlement, Plaintiff's work environment worsened, and Mr. Spallone became more hostile toward Plaintiff.

35. In the days following the notarization incident, Plaintiff was singled out, over-scheduled for Saturday work, and isolated from coworkers. Although Saturday work was supposed to be voluntary and employees ordinarily signed up if they wanted to work, Mr. Spallone began calling Plaintiff directly and asking him to work Saturdays even when Plaintiff had not signed up.

Plaintiff felt compelled to accept those Saturday assignments to protect his job. Plaintiff was also singled out for undesirable tasks, such as moving trash and performing small manual-labor assignments that were not assigned to others.

36. Defendant also assigned Plaintiff to work with a helper named Zach, a White Male, on a demolition job in Land O' Lakes. Zach did not meaningfully assist Plaintiff, and a homeowner questioned why Plaintiff had a helper if the helper was not going to help. When Plaintiff returned to work the next day, Zach made it appear that Zach had done the work alone and that Plaintiff had not worked. Mr. Spallone accepted Zach's account without asking Plaintiff for his side of the story.

37. Plaintiff complained about the disparate treatment, but nothing was done.

38. On or about November 30, 2024, the Saturday after Thanksgiving, Defendant called Plaintiff in to work even though Plaintiff was the only regular employee present from a workforce of approximately thirty to forty employees. Defendant assigned Plaintiff to work with an individual Plaintiff had never met or heard of before, who stated that he did not work for Defendant and that Mr. Spallone was paying him under the table for a side job.

39. That day, Plaintiff and the non-employee worker traveled together in the same truck to complete the job. After most of the work was complete, the non-employee worker told Plaintiff that he only needed to return to the shop for a rivet gun and install two rivets, that he did not need Plaintiff's help, and that Plaintiff could leave because Plaintiff had family in town for the holiday. Plaintiff confirmed with the worker that he did not need assistance, and the worker drove Plaintiff back to the shop so Plaintiff could retrieve his personal vehicle.

40. Shortly after Plaintiff arrived home, Mr. Spallone sent Plaintiff a text message stating, "*Don't worry about it, I'll clock you out and no need to come back to work again. It's just*

*not going to work out thank you*." When Plaintiff called Mr. Spallone for clarification, Mr. Spallone stated that Plaintiff had abandoned the other worker at the job site. Plaintiff denied abandoning anyone because the worker had driven Plaintiff back to the shop, had told Plaintiff he did not need help, and had only two rivets left to install.

41. Plaintiff had received no prior warning, counseling, or progressive discipline before his termination.

42. Immediately after Plaintiff's termination, Bryan Monroe, a White Male, was rehired into Plaintiff's position.

43. Defendant maintained no contemporaneous documentation of any performance, attendance, or disciplinary problems concerning Plaintiff. Only after Plaintiff's termination did Defendant assert, for the first time, that Plaintiff was terminated for alleged poor performance, attendance problems, insubordination, and an incident in which Plaintiff purportedly left a coworker alone on a job site.

44. Defendant's stated reasons for Plaintiff's termination have shifted over time, are unsupported by any contemporaneous documentation, and are contradicted by the record, and are therefore pretextual.

45. Defendant's abrupt termination of Plaintiff by text message, without warning or investigation, its deviation from any progressive-discipline practice it had instituted against non-Black employees, its more favorable treatment of non-Black comparators who engaged in the same or worse conduct, and its immediate replacement of Plaintiff with a White former employee, give rise to a reasonable inference that Plaintiff's race, color, and national origin, and his opposition to discriminatory treatment, were motivating factors in Defendant's decisions.

46. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered substantial damages, including lost wages and benefits, emotional distress, anxiety, humiliation, embarrassment, and financial hardship. Plaintiff was forced to deplete his savings, take out loans, and withdraw his daughter from school because he could no longer afford the tuition.

47. Plaintiff has retained the undersigned counsel to represent him in this matter and has become obligated to pay reasonable attorneys' fees and costs.

**COUNT I: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION**
**(Disparate Treatment) - TITLE VII**

48. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 47 above as if set out in full herein.

49. Plaintiff is a Black man of Jamaican national origin and, as such, is a member of classes protected under Title VII from discrimination on the basis of race, color, and national origin.

50. Plaintiff was qualified for his position. He performed Team-Lead-level installation and supervisory duties competently and reliably, was trusted with company vehicles and customer-facing responsibilities, and was never written up or disciplined.

51. Defendant subjected Plaintiff to adverse employment actions because of his race, color, and national origin, including downgrading his job classification, singling him out for weekend and disproportionate manual-labor assignments, subjecting him to heightened scrutiny and discipline, and terminating his employment on or about November 30, 2024, without warning.

52. Similarly situated employees outside Plaintiff's protected classes were treated more favorably. As set forth in the general allegations section, White and Hispanic employees who

arrived late, were absent, or failed to appear for scheduled shifts, including a White coworker known as Dante (Dantae Luhouse) who repeatedly no-called and no-showed and was permitted to take a company truck home, were neither disciplined nor terminated, while Plaintiff was terminated without any prior discipline.

53. Plaintiff's race, color, and national origin were motivating factors in Defendant's decision to subject him to adverse employment actions and to terminate his employment.

54. Any legitimate, nondiscriminatory reason proffered by Defendant for Plaintiff's termination is pretextual. Defendant's reasons have shifted over time, are unsupported by any contemporaneous documentation, deviate from any progressive-discipline practice, and are contradicted by the record, including the immediate rehiring of a White former employee into Plaintiff's position.

55. Plaintiff sustained emotional suffering, mental anguish, humiliation, and economic injury attributable to Defendant's discriminatory conduct.

56. Defendant acted with malice and with reckless indifference to Plaintiff's federally protected civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Issue an order enjoining Defendant to cease and desist from the conduct described in Count I of this Complaint and from discriminating against Plaintiff in any manner whatsoever.

b. Issue an order requiring Defendant to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count I of this Complaint, and from all other forms of discrimination in the future.

c. Issue an order requiring Defendant to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of discrimination and taking suitable remedial action.

d. Order reinstatement of Plaintiff to the position he would occupy and with all the benefits he would have received if he had not suffered adverse employment action attributable to

race, color, and national origin discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e. Award Plaintiff back pay, including overtime pay and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

f. Award Plaintiff compensatory damages for his emotional suffering.

g. Award Plaintiff punitive damages.

h. Award Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i. Award Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT II: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION**
**(Retaliation) – TITLE VII**

57. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 47 above as if set out in full herein.

58. The Plaintiff engaged in protected activity under Title VII by opposing and complaining about discriminatory and unequal treatment based on his race, color, national origin, and ethnicity, including by expressing to a coworker that he believed he was being mistreated because he is a Black man of Jamaican national origin who wears dreadlocks and by complaining about unequal treatment and the treatment of non-Black employees in the workplace.

59. Defendant, through its managers and/or agents, knew of Plaintiff's protected activity.

60. Following Plaintiff's protected activity, Defendant subjected Plaintiff to adverse employment actions, including heightened scrutiny, changes in his work assignments, increased Saturday scheduling, disproportionate manual-labor assignments, characterization of Plaintiff as "combative," and ultimately termination of his employment.

61. The temporal proximity between Plaintiff's protected activity and the adverse employment actions, together with Defendant's disparate treatment of non-Black employees, the

absence of prior discipline, the shifting explanations for Plaintiff's termination, and Defendant's immediate rehiring of a White former employee into Plaintiff's position, support a reasonable inference of a causal connection between Plaintiff's protected activity and Defendant's adverse employment actions.

62. Defendant terminated Plaintiff's employment because he engaged in protected activity and opposed discriminatory treatment based on race, color, national origin, and/or ethnicity, in violation of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3.

63. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including lost wages and benefits, emotional distress, humiliation, embarrassment, and financial hardship.

64. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages to the extent permitted by law.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a. Issue an order enjoining the Defendant to cease and desist from the conduct described in this Count and from retaliating against the Plaintiff in any manner whatsoever.

b. Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from retaliation and other unlawful employment practices.

c. Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from retaliation in the workplace and establishing reasonable and adequate procedures for investigating complaints of discrimination based on race, color, national origin, and/or ethnicity and taking suitable remedial action.

d. Order reinstatement of the Plaintiff in the position he would occupy and with all the benefits he would have if he had not suffered the adverse employment actions attributable to Defendant's unlawful retaliation, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined to be impractical.

e. Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been unlawfully terminated.

f. Award the Plaintiff compensatory damages for his emotional suffering and other compensable injuries.

g. Award the Plaintiff punitive damages to the extent permitted by law.

h. Award the Plaintiff attorneys' fees and costs, including expert witness fees where recoverable, pursuant to 42 U.S.C. § 2000e-5(k).

i. Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT III: RACE DISCRIMINATION**
**(Disparate Treatment) - 42 U.S.C. § 1981**

65. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 47 above as if set out in full herein.

66. Plaintiff is a member of a protected class of Black, Jamaican citizens.

67. At all times relevant, Plaintiff was in a contractual relationship with Fence Central within the meaning of 42 U.S.C. § 1981, as amended, arising from his employment.

68. During the course of Plaintiff's employment with Fence Central, Defendant violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms, and conditions of his employment contract as enjoyed by non-Black employees, in violation of 42 U.S.C. § 1981(b), as amended.

69. During the course of Plaintiff's employment with Fence Central, Plaintiff did not enjoy the same benefits, privileges, terms, and conditions of employment as non-Black employees of Defendant, including the opportunity to advance to a Team Lead position and the freedom from disparate scrutiny, discipline, and termination.

70. Defendant's treatment, practices, and policies directed toward Plaintiff, as more fully described in the general allegations section of this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by

non-Black citizens, and denied Plaintiff the right to make and enforce contracts as enjoyed by non-Black citizens, in violation of 42 U.S.C. § 1981, as amended.

71. Through their actions and treatment of Plaintiff, Defendant intended to discriminate against Plaintiff on the basis of his race and ancestry.

72. Defendant had knowledge of the discriminatory acts and treatment described in the general allegations section of this complaint above and failed to take remedial action.

73. Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to Plaintiff's rights and emotional and physical well-being.

74. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage on an ongoing and continuous basis.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of 42 U.S.C. § 1981, as amended;

b. Award Plaintiff actual damages suffered;

c. Award Plaintiff compensatory damages under 42 U.S.C. § 1981 for the embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered;

d. Award Plaintiff prejudgment interest on his damages award;

e. Award Plaintiff punitive damages;

f. Enjoin Defendant, its officers, agents, employees, and anyone acting in concert with them, from discriminating against Plaintiff and any employee;

g. Award Plaintiff reasonable costs and attorneys' fees; and

h. Grant Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT IV: RACE DISCRIMINATION**
**(Retaliation) - 42 U.S.C. § 1981**

75. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 47 above as if set out in full herein.

76. Plaintiff is a member of a protected class of Black, Jamaican citizens.

77. At all times relevant, Plaintiff was in a contractual relationship with Fence Central within the meaning of 42 U.S.C. § 1981, as amended.

78. Plaintiff engaged in protected activity when he opposed race-based discriminatory treatment, including voicing that he felt he was being mistreated and treated unfairly because of his race and appearance as a Black man of Jamaican national origin, and complaining about the disparate treatment he experienced in the workplace.

79. Following Plaintiff's protected activity, Defendant retaliated against Plaintiff by subjecting him to materially adverse actions, including downgrading his classification, isolating him, singling him out for weekend and disproportionate manual-labor assignments, and terminating his employment on or about November 30, 2024.

80. There is a causal connection between Plaintiff's protected activity and the adverse actions, as demonstrated by their close temporal proximity, Defendant's escalating hostility, Defendant's failure to investigate, and Defendant's shifting and undocumented explanations.

81. Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to Plaintiff's rights and emotional and physical well-being.

82. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage on an ongoing and continuous basis.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Defendant for its violations of 42 U.S.C. § 1981, as amended;

b. Award Plaintiff actual damages suffered;

c. Award Plaintiff compensatory damages under 42 U.S.C. § 1981 for the embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered;

d. Award Plaintiff prejudgment interest on his damages award;

e. Award Plaintiff punitive damages;

f. Enjoin Defendant, its officers, agents, employees, and anyone acting in concert with them, from retaliating against Plaintiff and any employee;

g. Award Plaintiff reasonable costs and attorneys' fees; and

h. Grant Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT V: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION**
**(Disparate Treatment) - FCRA**

83. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 47 above as if set out in full herein.

84. At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10), and Defendant was a "person" and an "employer" as defined by Fla. Stat. § 760.02.

85. At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

86. Plaintiff is a Black man of Jamaican national origin and is therefore a member of protected classes based on race, color, and national origin.

87. During the course of Plaintiff's employment with Defendant, Plaintiff was subjected to a discriminatory and offensive work environment and adverse employment actions because of his race, color, and national origin, as more fully described in the general allegations section of this Complaint.

88. The discriminatory conduct referred to in the general allegations section of this Complaint is and was offensive to Plaintiff and would be offensive to a reasonable person.

89. Plaintiff was subjected to the conduct referred to in this Complaint because he is a Black man of Jamaican national origin, and similarly situated employees who are not Black and not of Jamaican national origin were not subjected to the adverse employment actions described in the general allegations section of this Complaint, including the termination of their employment and the denial of advancement.

90. Plaintiff was and is qualified for his position while working for Defendant.

91. Defendant violated the Florida Civil Rights Act by discriminating against Plaintiff because of his race, color, and national origin in the terms, conditions, and privileges of his employment.

92. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

93. Any alleged nondiscriminatory reason for this treatment of Plaintiff by Defendant is a mere pretext for the actual reason for discriminating against Plaintiff based on his race, color, and national origin.

94. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights pursuant to Fla. Stat. § 760.10, and were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, color, or national origin;

d. Order Defendant to make Plaintiff whole, by compensating him for lost wages and benefits, including front pay and back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law, including punitive damages and attorneys' fees pursuant to Fla. Stat. § 760.11;

g. Award Plaintiff costs of this action, including reasonable attorneys' fees; and

h. Grant such other and further relief as the Court deems just and proper.

**COUNT VI: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION**
**(Retaliation) - FCRA**

95. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 47 above as if set out in full herein.

96. At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which makes it an unlawful employment practice for an employer to discharge or otherwise discriminate against an individual because of the individual's race, color, religion, sex, national origin, age, handicap, or marital status, and prohibits retaliation against an individual because the individual has opposed a practice prohibited by the

FCRA or has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the FCRA.

97. The Plaintiff is a member of protected classes based on his race, color, national origin, and ethnicity.

98. During the course of his employment with the Defendant, Plaintiff opposed and complained about discriminatory and unequal treatment based on his race, color, national origin, and/or ethnicity.

99. Plaintiff's complaints and opposition to discriminatory treatment constituted protected activity under the FCRA.

100. Plaintiff was subjected to adverse employment actions after engaging in protected activity, including heightened scrutiny, changes in his work assignments, increased Saturday scheduling, disproportionate manual-labor assignments, being characterized as "combative," and ultimately termination of his employment.

101. The Plaintiff was subjected to the foregoing adverse employment actions because he complained about and opposed discriminatory treatment. Specifically, Plaintiff complained about being treated unfairly because he is a Black man of Jamaican national origin who wears dreadlocks and complained about unequal treatment in the workplace, including the disparate treatment of non-Black employees. Following these complaints, Defendant subjected Plaintiff to adverse treatment and ultimately terminated his employment.

102. The Plaintiff was and is qualified for his position while working for the Defendant.

103. The Defendant violated the Florida Civil Rights Act by retaliating against the Plaintiff because of his protected activity opposing discrimination based on race, color, national origin, and/or ethnicity.

104. As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

105. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

106. The aforementioned actions of the Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice that retaliates against an employee for opposing discrimination based on race, color, national origin, and/or ethnicity;

d. Order Defendant to make Plaintiff whole, by compensating him for lost wages and benefits, including front pay and back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law, including punitive damages and attorneys' fees pursuant to Fla. Stat. § 760.11;

g. Award Plaintiff costs of this action, including reasonable attorneys' fees; and

h. Grant such other and further relief as the Court deems just and proper.

**COUNT VII: RETALIATION**
**(Termination) – Fla. Stat. § 440.205**

107. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

108. At all times relevant, Plaintiff was employed by Defendant as an Assistant Team Lead and, later, classified as a Floater.

109. On or about November 14, 2024, Plaintiff sought the assistance of Defendant's office assistant and notary, Barbara Baynes, in connection with the notarization of a release relating to the settlement of a prior workers' compensation matter.

110. Upon information and belief, Defendant's owner, Michael Spallone, became aware of Plaintiff's prior workers' compensation matter and settlement after learning that Plaintiff had requested the notarization.

111. Following Defendant's discovery of Plaintiff's prior workers' compensation matter, Defendant, through Spallone, subjected Plaintiff to increased hostility, scrutiny, isolation, undesirable assignments, and scheduling practices, including requiring Plaintiff to work on Saturdays and assigning him undesirable work.

112. On November 30, 2024, Defendant terminated Plaintiff's employment. Spallone communicated to Plaintiff that he would clock Plaintiff out and that Plaintiff did not need to return to work, stating that "it's just not going to work out."

113. Defendant subsequently asserted that Plaintiff's termination was based upon alleged poor performance, attendance, insubordination, and allegedly abandoning a worker. These reasons were not supported by contemporaneous disciplinary documentation and were inconsistent with Plaintiff's prior work history.

114. Section 440.205, Florida Statutes, provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."

115. Plaintiff's workers' compensation claim and/or attempt to claim workers' compensation benefits constituted protected activity under Fla. Stat. § 440.205.

116. Defendant knew of Plaintiff's workers' compensation claim and/or attempt to claim workers' compensation benefits.

117. Defendant's adverse treatment of Plaintiff, including increased scrutiny, hostility, undesirable assignments, scheduling practices, and ultimately termination, occurred after Defendant learned of Plaintiff's workers' compensation matter.

118. The temporal proximity between Defendant's discovery of Plaintiff's workers' compensation matter and the subsequent adverse treatment and termination, together with Defendant's lack of prior disciplinary action and its subsequently asserted and inconsistent reasons for termination, support an inference that Plaintiff's workers' compensation claim and/or attempt to claim workers' compensation benefits was a motivating factor in Defendant's actions.

119. Alternatively, Plaintiff alleges that Defendant would not have terminated Plaintiff but for Plaintiff's protected activity under the Workers' Compensation Law.

120. By engaging in the foregoing conduct, Defendant violated Fla. Stat. § 440.205.

121. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including lost wages and benefits, loss of earning capacity, emotional distress, mental anguish, and other compensatory damages.

122. Defendant's conduct was willful, wanton, and/or reckless, thereby entitling Plaintiff to all damages and remedies available under Florida law.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against Defendant for back pay, front pay, compensatory damages, damages for emotional distress

**JURY TRIAL DEMAND**

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: September 18, 2026.**

Respectfully submitted,

**s/ Tanesha W. Blye**
Tanesha W. Blye, Esq. (FBN: 738158)
Email: attorneyblye@lawyerofjustice.com
Secondary Emails: legalassistant@lawyerofjustice.com; paralegal@lawyerofjustice.com
THE LAW OFFICES OF T. WALLS BLYE, PLLC
15800 Pines Blvd., Ste 321, Pembroke Pines, FL 33027
66 West Flagler St., Ste. 900, Miami, FL 33130
Main Phone: (786) 796-1814
Legal Assistant's Phone: (305) 482-1209

***Lead Counsel for Plaintiff***